UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CESAR SILVA,

    Plaintiff,

v.                                              Case No. 2:21-cv-210-JLB-NPM

LEE COUNTY, FLORIDA,

    Defendant.
_____

# ORDER

    Cesar Silva is a disabled military veteran who lives in Lee County, Florida, and requires the use of a service animal—an eight-year-old German Shepherd named Sophia. He claims that he was unable to visit a public beach with Sophia because Lee County has banned all service animals from that beach in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Accordingly, Mr. Silva sues Lee County for violating Title II of the ADA under both a disparate-impact theory and an intentional-discrimination theory. (Doc. 1.)

    Lee County moves to dismiss Mr. Silva's suit and argues that its so-called "ban" on service animals was nothing more than a poorly worded sign that has since been removed. (Doc. 12.) The voluntary removal of the sign, according to Lee County, has mooted Mr. Silva's lawsuit. Mr. Silva opposes dismissal because he believes there is still a live controversy as to Lee County's purported ban on service animals. (Doc. 14.) After carefully considering the parties' arguments, the Court agrees that Lee County's voluntary removal of the offending signage has mooted

this case. Therefore, Lee County's motion to dismiss (Doc. 12) is **GRANTED**, and Mr. Silva's claims are **dismissed without prejudice** as moot.

BACKGROUND

Mr. Silva suffers from multiple disabilities, including post-traumatic stress disorder ("PTSD"), and requires the use of a walker and cane to ambulate. (Doc. 1 at 3, ¶¶ 11–12.) Sophia helps Mr. Silva by picking up objects he drops, alerting others when he requires assistance, and acting as a barrier between him and large crowds. (Id. at 4, ¶ 15.) She "received over 1,500 hours of training in obedience, socialization, desensitization, public access training and advanced skill work" through Guardian Angels Medical Service Dogs, Inc. (Id. at 3–4, ¶ 14.)

In February 2021, Mr. Silva and Sophia attempted to visit Bunche Beach, a public beach in Lee County. (Id. at 4–5, ¶ 23.) Mr. Silva claims he was prevented from visiting Bunche Beach because Lee County has banned all pets and service animals from that beach. (Id. at 5–6, ¶¶ 24–25.) To prove the existence of this ban, Mr. Silva's complaint cites: (1) a screenshot from Lee County's website which provides information about Bunche Beach and states, "[p]ets are not allowed at this park"; and (2) a picture of a sign Mr. Silva encountered on his visit. (Id.) The sign contains the words "NO PETS OR SERVICE ANIMALS" in large print on top. (Id. at 6, ¶ 25.) In smaller print immediately below, the sign says, "This preserve provides habitat for wildlife protected by the Endangered Species Act." (Id.) The middle of the sign contains an interdictory circle, inside of which is a silhouette of a dog on a leash. (Id.) Toward the bottom, the sign cites "Lee County Ordinance 18-12 as amended" and states that according to "Architectural Barriers Act Standards

2

§ 1019.1 . . . exceptions to the [ADA] exist where compliance is limited or precluded by federal law, including the Endangered Species Act (16 U.S.C. §§ 1531 et seq)" or other laws intended to "preserve threatened or endangered species."[1]  (Id.)  As depicted in Mr. Silva's Complaint, the sign appears as follows:



On March 11, 2011, Mr. Silva brought this action against Lee County, alleging that its policy banning service dogs from Bunche Beach violated Title II of the ADA under both a disparate impact theory and an intentional discrimination theory.  (Doc. 1.)  About a month later, Lee County moved to dismiss the action as

---

[1] The Architectural Barriers Act and its administrative standards were enacted "to insure whenever possible that physically handicapped persons will have ready access to, and use of, [qualifying] buildings."  42 U.S.C. § 4152.  While the Architectural Barriers Act Standards § 1019.1 exempts compliance if precluded by the Endangered Species Act, it is not clear how that statute relates to service dogs.

3

moot. (Doc. 12.) In support of the motion, Lee County filed a declaration from Alise Flanjack, Deputy Director for Lee County Parks and Recreation. (Doc. 13.) Ms. Flanjack averred that the sign Mr. Silva photographed at Bunche Beach was removed on February 18, 2021.[2] (Id. at 2, ¶ 7.) Ms. Flanjack also claimed that Lee County "ordered new signage with revised language" and installed it at Bunche Beach on March 17, 2021. (Id. at ¶¶ 8–9.) A mockup of the "new signage" is attached to Ms. Flanjack's declaration. (Doc. 13-2.) Its design is very similar to the original sign Mr. Silva photographed—a blue background with an interdictory circle containing a silhouette of a dog. (Id.) The language of the new sign, however, is much different. The top of the sign now says "NO PETS ALLOWED" without reference to service animals or the Endangered Species Act. (Id.) Below the interdictory circle, the new sign contains the following language:

> In accordance with the Americans with Disabilities Act (ADA), service dogs are permitted on any beach open to the public. A service dog is trained to do specific tasks directly related to the owner's disability. Emotional support animals, comfort animals, and therapy dogs are not considered service animals under the ADA and therefore are not permitted. A service dog must remain under the owner's control at all times. Any individual whose failure to maintain control of a dog results in disturbance to wildlife will be asked to leave the beach and may receive a citation.

(Id.) At the bottom, the new sign again cites "Lee County Ordinance 18-12 as amended." (Id.) Besides the redesign, Ms. Flanjack also noted that Lee County

---

[2] According to Ms. Flanjack, the original sign was erected because the U.S. Fish and Wildlife Service "had designated all of the shoreline at [Bunche Beach] as a critical habitat for federally threatened species of birds." (Doc. 13 at 2, ¶ 6.) Dogs ostensibly pose some kind of threat to these birds, but it remains unclear how the Architectural Barriers Act and the Endangered Species Act interfere with a person with a disability's right to bring a service dog to a public beach. See supra note 1.

4

Ordinance 18-12 exempts service animals from any prohibition on entering any public park, including Bunche Beach. (Doc. 13 at 2, ¶ 5); see also Lee Cnty., Fla., Ordinances No. 18-12, § 9.6(M) (2018) ("Service Animals are exempt from area restriction in accordance with federal and state law."). In other words, the sign Mr. Silva photographed was apparently contradicted by the same local law that it cited.

After Mr. Silva was notified of Lee County's motion to dismiss, he returned to Bunche Beach and photographed a different sign that was "still posted on the property" and made it "appear as though not all animals are permitted at Bunche Beach.³ (Doc. 14-1 at 3, ¶¶ 12–13.) This sign merely said, "NO PETS Allowed" and contained an interdictory circle with a dog silhouette. (Id.) It made no references to service animals, the Endangered Species Act, or Lee County ordinances.

## LEGAL STANDARD

A motion to dismiss a claim for mootness is governed by Federal Rule of Civil Procedure 12(b)(1). Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents, 633 F.3d 1297, 1308 (11th Cir. 2011). A motion under Rule 12(b)(1) may mount either a "facial" or a "factual" challenge to jurisdiction." Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir. 1990). When resolving a factual challenge, the Court may consider extrinsic evidence like testimony and affidavits. Id. Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself

---

³ As explained below, Mr. Silva's declaration opposing dismissal suggests—for the first time—that he originally saw at least three signs banning service animals. (Doc. 14-1 at 3, ¶ 11.) His declaration, however, does not assert that he observed any of those three signs on his return visit to Bunche Beach.

5

the merits of jurisdictional claims." Id. (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).  "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).

## Discussion

Article III of the Constitution limits federal courts to deciding "cases" or "controversies."  U.S. Const. art. III, § 2.  "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997)).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).

"[M]ere voluntary cessation of a challenged practice does not render a case moot." Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998) (citing Cnty. of L.A. v. Davis, 440 U.S. 625, 631 (1979)).  "Otherwise, a party could moot a challenge to a practice simply by changing the practice during the course of a lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." Id.  Voluntary cessation only moots a case "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)).

In cases where the defendant is a government actor, "there is a rebuttable presumption that the objectionable behavior will <u>not</u> recur." Troiano v. Supervisor of Elections, 382 F.3d 1276, 1283 (11th Cir. 2004). "[T]he government actor is entitled to this presumption only <u>after</u> it has shown unambiguous termination of the complained of activity." Doe v. Wooten, 747 F.3d 1317, 1322 (11th Cir. 2014) (citing Harrell v. The Fla. Bar, 608 F.3d 1241, 1267–68 (11th Cir. 2010)). If the government actor can meet this burden, then a challenge to its policy "will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." Troiano, 382 F.3d at 1285. The Eleventh Circuit considers three factors during both the initial inquiry about termination and the subsequent inquiry about whether the challenged conduct will reoccur:

> (1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction;" and (3) whether the government has "consistently applied" a new policy or adhered to a new course of conduct.

Wooten, 747 F.3d at 1323 (indirectly quoting Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1308). This list is not exhaustive; other relevant factors may include the timing and content of the cessation decision, and whether the challenged behavior was a continuing practice. Id. Lee County argues that removal of the sign Mr. Silva photographed renders this case moot. (Doc. 12 at 6–9.) Indeed, Lee County's position is that the sign was never intended to conflict with the plain language of Ordinance 18-12 (cited in the sign) which exempts service dogs from the Ordinance's general prohibition on dogs in public parks. In simple terms, Lee

7

County appears to acknowledge that the original sign was flat-out wrong, but any problems it may have caused are now moot because it was removed.

Mr. Silva disagrees. He now claims that he encountered at least <u>three</u> signs prohibiting service animals during his first visit to Bunche Beach—a fact not mentioned in his complaint. (Doc. 14 at 7; Doc. 14-1 at 3, ¶ 11.) Because Lee County "has not definitely confirmed" that all three signs were removed, Mr. Silva contends that the case is not moot. (Doc. 14 at 7.) Mr. Silva also claims that he returned to Bunche Beach after his lawyers told him Lee County "had removed the [problematic] sign . . . and replaced it with a new sign." (Doc. 14-1 at 3, ¶ 12.) On his second visit, Mr. Silva photographed a different sign that read "NO PETS Allowed" without mentioning service animals. (<u>Id.</u>) This other sign, according to Mr. Silva, makes it appear that Lee County continues to ban service animals from Bunche Beach. (Doc. 14 at 3–4.) Apart from this factual argument, Mr. Silva suggests that the three factors typically considered by the Eleventh Circuit when analyzing voluntary cessation weigh against dismissal. (<u>Id.</u> at 9–11.)

After carefully reviewing the parties' arguments, the Court concludes that Lee County's removal and replacement of the offending sign (or signs) has mooted the case. As explained earlier, Lee County is entitled to a rebuttable presumption that its allegedly illegal behavior will not reoccur if it can demonstrate that it has unambiguously terminated the activity. <u>Troiano</u>, 382 F.3d at 1283; <u>Doe</u>, 747 F.3d at 1322. Here, the illegal behavior is Lee County's supposed policy of banning service animals from Bunche Beach. From the start, it is unclear whether such a policy

8

ever truly existed. Lee County Ordinance 18-12, which is cited in the sign Mr. Silva photographed, exempts service animals from any prohibition on entering public parks like Bunche Beach. While the sign may have said "NO PETS OR SERVICE ANIMALS," that language was contradicted by the same legal authority cited in the sign. It is, therefore, doubtful whether the sign was intended to enforce any kind of coherent "policy" against service dogs at Bunche Beach. On the face of the situation, it seems like Mr. Silva just encountered a poorly worded sign.

Regardless of the intent behind the sign, Lee County has submitted a sworn declaration from Ms. Flanjack—Deputy Director for Lee County Parks and Recreation—to show that the offending signage was removed, and new signage was installed at Bunche Beach on March 17, 2021. (Doc. 13 at 2, ¶¶ 8–9.) While Mr. Silva claims to have seen three problematic signs, his return to Bunche Beach did not produce any photographic evidence that any such signs remained. Instead, he photographed entirely different signs that did not specifically mention service animals. (Doc. 14-1 at 3, ¶¶ 12–13.) There is nothing to suggest that Lee County is attempting to manipulate the Court's jurisdiction. On the contrary, Lee County's redesign of the signage (as opposed to mere removal) is evidence that there was some deliberation behind the County's decision—at least enough deliberation to think about what the new sign should say. The Court has no reason to believe that Lee County's "new" policy is not being consistently applied. Indeed, the Court is unclear on whether this policy is "new" in the first place, considering the plain language of Lee County Ordinance 18-12. The new sign appears to reflect what Lee

9

County's policy has been all along (or at least since 2018, when Ordinance 18-12 was originally enacted). Based on this evidence, the Court concludes that Lee County has shown unambiguous termination the complained-of activity. Having made this showing, Lee County is now entitled to a rebuttable presumption that its behavior will not reoccur. Mr. Silva fails to rebut that presumption. At most, he has demonstrated that Lee County's website and some other signs ban "pets" from Bunche Beach. (Doc. 14-1 at 3–4, ¶¶ 12–13.) This is not enough.

The ADA's implementing regulations define "service animal" as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 35.104. Besides dogs, no other animal may be a service animal. And the tasks which the service animal performs "must be directly related to the individual's disability." Id. Importantly, "[t]he crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition." Id. Given how narrow this definition is, district courts have unanimously concluded that household pets are not service animals under the ADA and its regulations. See, e.g., Davis v. Ma, 848 F. Supp. 2d 1105, 1116 (C.D. Cal. 2012) ("The ADA does not create unlimited license for disabled customers to enter facilities of public accommodation with their pets."), aff'd, 568 F. App'x 488 (9th Cir. 2014); Rose v. Springfield-Greene Cnty. Health Dep't, 668 F. Supp. 2d 1206, 1215 (W.D. Mo. 2009) ("An animal that simply provides comfort or reassurance is

equivalent to a household pet, and does not qualify as a service animal under the ADA."), aff'd sub nom. Rose v. Cox Health Sys., 377 F. App'x 573 (8th Cir. 2010).

As pets are not service animals under the ADA's regulations, Mr. Silva cannot refute Lee County's presumption of non-reoccurrence with evidence that its website or some remaining signage bans pets from Bunche Beach. Such a ban would not violate the ADA. And the allegations in Mr. Silva's own complaint make clear that Sophia is more than a pet. She has more than 1,500 hours of specialized training and performs tasks that are directly related to Mr. Silva's multiple disabilities. (Doc. 1 at 3–4, ¶¶ 14–15.) A ban on pets plainly does not apply to her.

Mr. Silva's last-ditch effort is to argue that Lee County's replacement signage does not comply with section 4.30 of the 1991 ADA Accessibility Guidelines, which were promulgated by the Department of Justice in 1991 and appear in Appendix D to 28 C.F.R. part 36. In 2010, the DOJ adopted newer accessibility guidelines without abrogating the older ones. See generally Colo. Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1217 (10th Cir. 2014). Depending on when the structure at issue was constructed, either the 1991 or the 2010 guidelines may apply. See generally De La Rosa v. Lewis Foods of 42nd St., LLC, 124 F. Supp. 3d 290, 296 (S.D.N.Y. 2015). Even if the Court were to assume that the 1991 ADA Accessibility Guidelines somehow govern this case (and it is not immediately clear why they should), the Court's decision would not change. Section 4.30 governs the appearance of signage—height, character size, mounting location, etc. A claim based on section 4.30 would be completely different from the ones pleaded in Mr.

Silva's complaint. Yet Mr. Silva has not requested to amend his complaint. Instead, he claims it was Lee County's burden to establish that any replacement signage complies with section 4.30, and that he should be allowed to further explore this issue in discovery. (Doc. 14 at 7; Doc. 14-1 at 4, ¶ 14.)

The Court disagrees. It was not Lee County's burden to anticipate a claim that Mr. Silva did not plead. And it goes without saying that discovery requires a live controversy—something which no longer exists in this case. Considering that Mr. Silva has not requested leave to amend his complaint, and that he needs discovery to "explore" his theory about section 4.30, the Court does not believe that granting Mr. Silva leave to amend would be productive. The Court will, therefore, dismiss Mr. Silva's claims without prejudice as moot and without leave to amend.

## CONCLUSION

1. Lee County's motion to dismiss (Doc. 12) is **GRANTED.**
2. Mr. Silva's complaint is **DISMISSED AS MOOT without prejudice** and without leave to amend.
3. The Clerk is **DIRECTED** to terminate any pending deadlines and close the file.

**ORDERED** in Fort Myers, Florida, on October 13, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE